**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DEBRA DOMENICK,<br><br>Plaintiff,<br><br>v.<br><br>LACKAWANNA COUNTY, et al.,<br><br>Defendants. | CIVIL ACTION NO. 3:25-cv-01541<br><br>(SAPORITO, J.) |

**MEMORANDUM**

This is an employment discrimination case. The plaintiff, Debra Domenick, claims that her current joint employers—Lackawanna County (the "County") and the Lackawanna County Court of Common Pleas (the "CCP")—have discriminated against her on the basis of her sex, in violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 201 *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000d *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.*

Domenick is a licensed and experienced trial attorney. In June 2024, she was appointed as Juvenile Delinquency Conflict Counsel, serving as a court-appointed defense attorney in juvenile delinquency proceedings before the Lackawanna County Court of Common Pleas. Although she is paid a set salary for an indefinite term, she is categorized

as a "vendor" rather than an employee of the County, and she is not paid on a W2 or provided with any employment benefits beyond her salary.

A primary dispute between the parties is whether Domenick is properly classified as a "vendor" rather than as an employee. In her role as Juvenile Delinquency Conflict Counsel, Domenick allegedly performs the same job duties and handles the same sort of cases—juvenile delinquency—as a male attorney counterpart who is on the County's payroll as a part-time W2 employee with employment benefits. She has identified additional comparators as well—four part-time conflict attorneys appointed to represent adult criminal defendants, each of whom is likewise on the County's payroll as part-time W2 employees with employment benefits.

Domenick served discovery requests aimed at ascertaining how these and other attorneys serving the County are typically paid—i.e., whether they are on payroll or paid as vendors. The plaintiff served her original discovery requests in February 2026. She received responses from the CCP on April 16, 2026, and from the County on April 30 and May 1, 2026. Upon reviewing the County's responses to interrogatories and 16 pages of document production, the plaintiff then served the

County with a deficiency letter on May 19, 2026. After some delay, the County responded to the deficiency letter on July 21, 2026. These parties then met and conferred about their discovery dispute on July 24, 2026, and counsel for the County agreed to supplement the County's discovery responses. But it has failed to follow through on that promise to supplement.

The matter now comes before the court on the plaintiff's Rule 37(a) motion to compel. Doc. 49. Domenick has filed a brief in support of her motion, including several exhibits, Doc. 50, the County has filed a brief in opposition, Doc. 55, and Domenick has filed a reply brief, Doc. 58. We address deficiencies identified by the plaintiff seriatim.

**A. Interrogatory No. 2**

In Interrogatory No. 2, Domenick has requested that the County:

> Identify each and every position or title [Domenick] held with Defendant(s) from June 1, 2024[,] to the present, including the dates [Domenick] held each such position, a description of the job duties [s]he performed in each position, and the names of each supervisor/manager, Judge[,] or [CCP] personnel who supervised [Domenick] in each such position.

Pl. Ex. B, at 5, Doc. 50-2.

In response, the County has objected "to the extent such

information is already in the possession of the Plaintiff and therefore available in a less burdensome manner." Pl. Ex. D, Doc. 50-4, at 7. Notwithstanding this objection, the County has responded that "on June 5, 2024, the Plaintiff was appointed by President Judge Trish Corbett as Juvenile Delinquency Conflict Counsel. The Plaintiff has remained in this position from June 5, 2024[,] up through the present time." *Id.*

Domenick primarily argues that the County's response is deficient insofar as it fails to describe her job duties or identify her supervisors, which "are facts and records that will be necessary for the Plaintiff to challenge and dispute Defendants' defenses." Pl. Br. Supp., Doc. 50, at 5. In its opposition brief, the County responds that it "has fully responded to Interrogatory No. 2," but, "[i]n the spirit of compromise," it will supplement its answer to this interrogatory and "provide the additional requested information when received." Cnty. Br. Opp'n 5, Doc. 55. In her reply, Domenick reports that the County had not yet supplemented its answer as promised, and she requests that the court enter an order "holding the County to its word." Pl. Reply Br. 5, Doc. 58.

The plaintiff has also suggested in her initial brief that the County's response is deficient because it fails to address positions she held before

June 1, 2024: Domenick was employed in the County public defender's office from 2017 to 2019, and she was an elected County Commissioner from January 2020 to January 2024. But these positions are clearly outside the scope of the interrogatory, which explicitly limits the responsive timeframe to June 1, 2024, through the present, and, moreover, they are not relevant to any claims or defenses at issue in this case.

Accordingly, based upon the County's concession, the plaintiff's motion will be granted to the extent it requests an order directing the County to supplement its answer to Interrogatory No. 2 to describe Domenick's job duties and the names of any County or CCP officials or employees who supervised her in her role as Juvenile Delinquency Conflict Counsel. The motion will otherwise be denied with respect to Interrogatory No. 2.

**B. Interrogatories No. 7 and No. 8**

In Interrogatories No. 7 and No. 8, Domenick seeks comparator information. In Interrogatory No. 7, she has requested that the County:

> For the last five (5) years, please identify every licensed attorney working on a part time, or per diem basis, either as a W2 County employee or paid as a vendor like Plaintiff.

> For each person, please list their:
>
> 1.) [N]ame
>
> 2.) Dates of employment or vendor status[]
>
> 3.) Sex
>
> 4.) Rate of pay, including any increase
>
> 5.) The department to which they are assigned for payroll purposes (for example: 1100 Human Services); and
>
> 6.) Whether the person has had any type of County benefits, including what those benefits were and the dates they were provided.

Pl. Ex. B, at 6. In Interrogatory No. 8, she has further requested that the County:

> For the individuals listed above as vendors, please identify who determined the person would be an approved/appointed vendor for the County and the amounts/benefits they would be paid for their services.

*Id.*

In response, the County has objected to these interrogatories as "vague, overly broad[,] and burdensome," and on relevance grounds. Pl. Ex. D, Doc. 50-4, at 8. Notwithstanding this objection, the County has responded that "over the past five (5) years, the position of Juvenile Delinquency Conflict Counsel has been performed by Shane Scanlon,

Kelly Hadley[,] and currently the Plaintiff. Said position provided a flat fee payment of $1,500.00 per month, except for the Plaintiff who received an increase in 2025 to $1,875.00 per month," and that "Shane Scanlon, Kelly Hadley[,] and the Plaintiff were all appointed by Co-Defendant [CCP]. The flat fee monthly compensation was set by the Co-Defendant [CCP]." *Id.*

Domenick argues that the County's response is deficient inasmuch as it is limited solely to the position of Juvenile Delinquency Conflict Counsel, failing to identify other licensed attorneys working on a part time or per diem basis, whether as a W2 County employee or as a vendor, as requested in this interrogatory. In its opposition brief, the County responds only that these other lawyers "have provided legal services to Lackawanna County in totally separate and distinct capacities," without any further elaboration. Cnty. Br. Opp'n 6–7.

Looking to the allegations of the complaint, it is clear to us that the plaintiff's inquiry into other lawyers employed or contracted by the County to provide similar legal services in non-juvenile delinquency contexts is reasonably calculated to lead to the discovery of admissible evidence. *See generally* Fed. R. Civ. P. 26(b)(1). We do not find these

interrogatories to be vague or overbroad on their face. In the absence of any evidence—or even representations—by the County to support its conclusory objection that these discovery requests are overly broad or unduly burdensome, which is further underscored by the plaintiff's representation in her reply brief that defense counsel has disclosed that the number of potentially responsive attorney positions is no more than ten or fifteen in total, we find the County's objection to be without merit. *See Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982) ("[T]he mere statement by a party that the interrogatory was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection to an interrogatory. On the contrary, the party resisting discovery 'must show specifically how . . . each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive.'" (quoting *Roesburg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296–97 (E.D. Pa. 1980) (ellipsis in original)).

Accordingly, the County's objection to these interrogatories will be overruled, and the plaintiff's motion will be granted to the extent it requests an order directing the County to supplement its answer to Interrogatories No. 7 and No. 8 to fully identify and describe other

licensed attorneys working for the County or CCP on a part time or per diem basis, whether as a W2 County employee or as a vendor, as set forth in those interrogatories.

**C. Interrogatory No. 22**

In Interrogatory No. 22, Domenick has requested that the County:

> Please identify who, if anyone, was responsible for supervising Shane Scanlon, both during his time as a vendor appointed by the Court, and up through his time as an employee with the County labeled: "Juvenile Guardian Ad Litem."

Pl. Ex. B, at 9.

In its initial response to this interrogatory, the County objected to this interrogatory as "vague, overly broad[,] and burdensome," and on relevance grounds. Pl. Ex. D, Doc. 50-4, at 12. Notwithstanding this objection, the County has responded that, "in his current position as Juvenile Guardian Ad Litem, Shane Scanlon works directly with Juvenile Probation on behalf of Human Services. He is supervised in conjunction by the Directors of Juvenile Probation and Human Services." *Id.* In response to the plaintiff's subsequent deficiency letter, the County provided an unverified supplement to its response, stating that "the current Director of Juvenile Probation is Chief Juvenile Probation Officer

Melissa Pavlowski and the current Director of Human Services is Interim Director Barbara Durkin." Pl. Ex. G, Doc. 50-7, at 5.

Domenick argues that the County's response is deficient inasmuch as it is limited solely to Scanlon's *current* supervisors while employed as Juvenile Guardian Ad Litem. The interrogatory also requested information regarding Scanlon's supervisors in his previous role as a vendor while serving as Juvenile Delinquency Conflict Counsel. In its opposition brief, the County does not maintain its initial objections to this interrogatory, arguing only that it has already adequately responded to this interrogatory,[1] "providing the identities of the individuals who supervised Attorney Scanlon in both capacities." Cnty. Br. Opp'n 5–6.

Looking to the allegations of the complaint, it is clear to us that the plaintiff's inquiry into the identity of Scanlon's supervisors in his previous role as a vendor while serving as Juvenile Delinquency Conflict Counsel—the very same position currently held by the plaintiff and at issue in this lawsuit—is reasonably calculated to lead to the discovery of admissible evidence. *See generally* Fed. R. Civ. P. 26(b)(1). Based on the

---

[1] We note that the opposition brief also references the County's response to Interrogatory No. 23, but the plaintiff does not seek relief from the court with respect to that interrogatory.

record before the court, the County has simply not responded to the interrogatory with respect to Scanlon's supervisors in his prior role. If they are the same individuals as those who supervise him in his subsequent role as a W2 employee while serving as Juvenile Guardian Ad Litem,[2] the County is obligated to disclose as much in the form of a signed and verified interrogatory answer. *See* Fed. R. Civ. P. 33(b)(3), (5); *Lapeire v. Volkswagen AG*, No. 88-2979, 1989 WL 52427, at *2 (E.D. Pa. May 15, 1989) ("Plaintiffs are not required to play hide and seek; they are entitled to have sworn answers to their interrogatories."); *see also State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 250 F.R.D. 203, 221–22 & nn. 17–18 (E.D. Pa. 2008).

Accordingly, in the absence of any live objection by the County to this interrogatory, the plaintiff's motion will be granted to the extent it requests an order directing the County to supplement its answer to Interrogatory No. 22 to fully identify Scanlon's supervisors in his previous role as a vendor while serving as Juvenile Delinquency Conflict Counsel.

---

[2] This seems unlikely, as it appears that both individuals named by counsel in the supplemental response—Melissa Pavlowski and Barbara Durkin—were appointed to their positions in or about January 2024.

**D. Document Requests No. 1 and No. 2**

In Document Requests No. 1 and No. 2, Domenick seeks "emails, memos[,] or other documentation" concerning her consideration by the County or CCP for any vendor position in 2024 and her ultimate appointment to the Juvenile Delinquency Conflict Counsel position. In Document Request No. 1, she has requested that the County:

> Please produce all internal emails, memos[,] or other documentation tending to show Plaintiff being considered for any type of vendor position with Defendant County or Defendant CCP at any point in calendar year 2024.

Pl. Ex. C, Doc. 50-3, at 4. In Document Request No. 2, she has requested that the County:

> Please produce all internal emails, memos[,] or other documentation between [then-President] Judge Trish Corbett and any CCP or county personnel regarding Plaintiff's June 5, 2024[,] appointment to serve as "Juvenile Delinquency Conflict Counsel."

*Id.*

In response, the County has objected to Document Request No. 1 as "vague, overly broad[,] and burdensome," and on relevance grounds. Pl. Ex. E, Doc. 50-5, at 6. Notwithstanding this objection, the County has responded in its verified answer to Document Request No. 1 that "Defendant Lackawanna County is not in possession of any such

documentation." *Id.* With respect to Document Request No. 2, the County has interposed no objections, responding simply by reference "to Co-Defendant [CCP]'s Answers to the Plaintiff's Requests for Production of Documents." *Id.*

Domenick contends that the County's response that it was not involved in the hiring process is simply not credible, arguing that it must possess *some* responsive communications, including, in particular, communications between Judge Corbett, who appointed Domenick to her current position, and County officials. In response to the plaintiff's subsequent deficiency letter, the County provided an unverified supplement to its responses to both of these document requests, stating specifically that "Defendant Lackawanna County was not involved in the [appointment] process. Defendant Lackawanna County further avers that it has located no emails from Judge Corbett to any County personnel regarding the Plaintiff's June 5, 2024[,] appointment by the [CCP] as Juvenile Delinquency Conflict Counsel." Pl. Ex. G, Doc. 50-7, at 5. In its brief in opposition to this motion, the County straightforwardly states that it "has no internal emails or memos about the Plaintiff being considered for any type of vendor position with Defendant Lackawanna

County or Co-Defendant [CCP] at any time in 2024 other than the emails that have already been produced by Co-Defendant [CCP]," and that it "has no emails or other documentation between Judge Corbett, Lackawanna County representatives[,] or Co-Defendant [CCP] other than what has already been provided by Co-Defendant [CCP]." Cnty. Br. Opp'n 7.

The County cannot produce what it does not have in its possession or control. *See Jacobs v. City of Pittsburgh*, 143 F. Supp. 3d 307, 329 (W.D. Pa. 2015) ("A party is not obliged to produce, at the risk of sanctions, evidence that it does not possess or cannot obtain." (brackets omitted)); *Dipietro v. Jefferson Bank*, 144 F.R.D. 279, 281 (E.D. Pa. 1992) ("Plaintiff cannot be compelled to produce what she does not possess . . . ."). The plaintiff subjectively disbelieves the response of the County and its counsel stating that it has no responsive documents, arguing that *some* number of communications must have been exchanged between CCP and County officials, pointing to two email messages produced by the CCP in response to this same discovery request. Both emails were sent on June 5, 2024, the day of Domenick's appointment to the Juvenile Delinquency Conflict Counsel position. The first was a 10:14 a.m. email from one CCP

official to another—from Frank Castellano, the CCP's Court Administrator, to Melissa Pavlowski, the CCP's Director of Juvenile Probation—in which Castellano shared a copy of the signed and filed court order appointing Domenick to her position and asked Pavlowski to share it with anyone who needed to be aware of the state court's appointment. Pl. Reply Ex. A (DEF COURT 055, DEF COURT 057), Doc. 58-1, at 2, 4. The second was a 3:46 p.m. email from Pavlowski, a CCP official, forwarding a copy of the state court's appointment order to Alicia Honney, an employee in the County's Department of Revenue & Finance, informing Honney that Domenick had been appointed to the position at a rate of $1,500 per month effective immediately. Pl. Reply Ex. A (DEF COURT 056), Doc. 58-1, at 3. But, as we understand it, the paucity of communications between the CCP and County regarding Domenick's appointment is entirely consistent with the nature of judicial employment in Pennsylvania state courts, in which a court has exclusive authority to hire, discharge, and supervise court personnel, while county officials are only responsible for the funding of salaries, services, and accommodations for the judicial system. *See generally Teamsters Local 776 v. Pa. Labor Relations Bd.*, 355 A.3d 30 (table decision), 2026 WL

60311, at *3–4 (Pa. Commw. Ct. 2026); *Bowser v. Clarion Cnty.*, 206 A.3d 68, 74 & n.5 (Pa. Commw. Ct. 2019). In this context, the fact that there are not additional responsive emails between CCP and County officials discussing Domenick's appointment is no surprise.

Accordingly, the plaintiff's motion will be denied to the extent it requests an order directing the County to supplement its response and produce additional documents responsive to Document Requests No. 1 and No. 2.

**E. Document Requests No. 5, No. 6, and No. 7**

In Document Requests No. 5, No. 6, and No. 7, Domenick seeks documents concerning her accounting or payroll status, her personnel file, and any acknowledgement forms regarding her receipt or review of County or CCP policies, identification credentials, or employer-issued equipment. In Document Request No. 5, she has requested that the County:

> Please produce any documents maintained by accounting or payroll showing Plaintiff on internal records, including her payee status and classification as a vendor.

Pl. Ex. C, Doc. 50-3, at 6. In Document Request No. 6, she has requested that the County:

> Please produce the complete personnel file of Plaintiff[], including but not limited to, any documents, records, letters, memoranda, notes, or computer printouts which were part of Plaintiff['s] personnel file at any time but were removed for any reason. . . .

*Id.* In Document Request No. 7, she has requested that the County:

> If Defendant contends Plaintiff[] was governed by *or* signed, or received any of the following documentation at any point from interview, appointment, hiring and through the present day, please provide full and complete copies of:
>
> a) Any employee handbook or employee policy / procedural acknowledgement or receipt forms;
>
> b) A county or CCP ID Badge;
>
> c) Any acknowledgement of any CCP code of conduct or CCP/County equipment or privacy forms; and
>
> d) [O]ther documentation pertaining to Plaintiff['s] ability to litigate about or concerning matters arising out of [her] employment relationship with the Defendant(s).

*Id.*

In response, the County has objected to Document Requests No. 5 and No. 7 "to the extent that such documents are within Plaintiff's possession and therefore are obtainable from a more convenient or less

burdensome source."[3] Pl. Ex. D, Doc. 50-5, at 7. Notwithstanding this objection, the County responded to Document Request No. 5 by producing certain "attached documents,"[4] and by referring to the response of co-defendant CCP to this same request for production, and it responded to Document Request No. 7 with an acknowledgement that the County had

---

[3] Although the parties have moved past this initial objection in their meet-and-confer process, we note that, even if an employee may have copies of employment-related documents in his or her possession, an employer's production of such documents in discovery serves the additional purpose of authenticating those documents. *See Walsh v. Fusion Japanese Steakhouse*, 585 F. Supp. 3d 766, 781 (W.D. Pa. 2022); *Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 487, 500 (D. Del. 2005).

[4] These "attached documents" referenced in the County's response appear to be the County's entire sixteen-page initial document production, Pl. Ex. D, Doc. 50-5, at 12–27, which includes: an "accounts payable invoice report" for the period of June 2024 through March 2026, identifying Domenick as a vendor and describing each payment made to her in that capacity (COUNTY 00001–00002); two identical copies of a Form 1099-NEC issued to Domenick for tax year 2024 (COUNTY 00003, COUNTY 00010); a "payment register" for the period from January 1, 2024, through September 16, 2025, identifying Domenick as the payee for various "monthly attorney fees" payments (COUNTY 00006–00007); the June 5, 2024, order by Judge Corbett appointing Domenick as Juvenile Delinquency Conflict Counsel (COUNTY 00008); an internal email chain between various county officials, dated March 26 and 27, 2026, concerning the County's gathering of information in preparation for its response to discovery requests in this action, including substantive representations regarding the non-existence of certain documents requested by the plaintiff (COUNTY 00011–00012); and a Form 1099-NEC issued to Domenick for tax year 2025 (COUNTY 00016).

provided Domenick with a laptop computer. *Id.* In response to Document Request No. 6, the County simply stated, without objection, that it was not in possession of any employee file for Domenick in her role as Juvenile Delinquency Conflict Counsel, referring the plaintiff instead to the response of co-defendant CCP to this same request for production. *Id.*

In her brief in support of her motion, Domenick argues that the County's response to Document Requests No. 5 and No. 6 were deficient because it failed to produce responsive accounting, payroll, and personnel records reflecting Domenick's prior employment with the County as an elected County Commissioner and as an assistant public defender. Domenick further argues that the County's response to Document Request No. 7 was deficient because, the County has failed to produce any documentation of Domenick's receipt of her County ID badge or her County-issued laptop computer. In its opposition brief, the County responds that, "[a]s a compromise," it will "produce any nonprivileged documents requested by the Plaintiff in Document Requests No. 5, 6[,] and 7," and that it "is searching for any such records and will produce the same when received." Cnty. Br. Opp'n 7–8. In her reply, Domenick reports that the County had not yet supplemented its production as promised,

and she requests that the court enter an order "holding the County to its word." Pl. Reply Br. 5.

Accordingly, based upon the County's concession, the plaintiff's motion will be granted to the extent it requests an order directing the County to supplement its response to Document Requests No. 5, No. 6, and No. 7 by producing all non-privileged documents responsive to these document requests.

**F. Document Request No. 15**

In Document Request No. 15, Domenick once again seeks comparator information. In Document Request No. 15, she has requested that the County:

> Please produce all internal county/CCP salary board seniority lists by Department, showing or reflecting any attorneys on payroll from June 1, 2024[,] through the present.

Pl. Ex. C, Doc. 50-3, at 7.

In response, the County has objected to this document request as "vague, overly broad[,] and burdensome," and on relevance grounds. Pl. Ex. E, Doc. 50-5, at 9. In articulating these objections, County further commented that "[v]endors are also not on Salary Board Seniority lists because they are not employees and receive no benefits." *Id.*

With respect to Interrogatories No. 7 and No. 8, we found that similar discovery into comparator information with respect to part-time or per-diem attorneys was not vague, overbroad, or unduly burdensome, and it was reasonably calculated to lead to the discovery of admissible evidence. On its face, Document Request No. 15 seeks relevant comparator information as well, albeit somewhat more broadly. But subject to these same limitations—i.e., limiting the document request's scope to part-time or per-diem attorneys, whether serving as W2 employees or as 1099 vendors—we find Document Request No. 15 is likewise reasonably calculated to lead to the discovery of admissible evidence. *See generally* Fed. R. Civ. P. 26(b)(1). Subject to these limitations, we find the County's conclusory objection to Document Request No. 15 to be without merit. *See Momah v. Albert Einstein Med. Ctr.*, 164 F.R.D. 412, 417 (E.D. Pa. 1996) ("The onus is . . . on the party objecting to discovery to state the grounds for objection 'with specificity.' Mere recitation of the familiar litany that an interrogatory or document production request is 'overly broad, burdensome, oppressive and irrelevant' will not suffice." (citation omitted)); *see also Josephs*, 677 F.2d at 992; *Roesburg*, 85 F.R.D. at 295.

Accordingly, the County's objection to these interrogatories will be overruled in part and sustained in part, and the plaintiff's motion will be granted to the extent it requests an order directing the County to supplement its response to Document Request No. 15 and to produce all seniority lists showing or reflecting any part-time or per-diem attorneys on payroll from June 1, 2024, through the present. The motion will otherwise be denied with respect to Document Request No. 15.

**G. Document Request No. 17**

Document Request No. 17 likewise seeks comparator information. In Document Request No. 17, the plaintiff has requested that the County:

> For any licensed attorney performing legal services for the County from 2020 through the present, please provide[] documentation reflecting anyone classified as a "vendor," and paid on a 1099 basis.

Pl. Ex. C, Doc. 50-3, at 8.

In response, the County has objected to this document request as "vague, overly broad[,] and burdensome," and on relevance grounds. Pl. Ex. E, Doc. 50-5, at 10.

In her brief in support of her motion, Domenick points to a statement previously filed by the County in this case, in which a County official explained that the CCP "submits vouchers for work performed by

the Plaintiff and the County issues a check to the Plaintiff as a 1099 vendor." Affidavit[5] of Brian Jeffers ¶ 7, Doc. 14, at 24. The plaintiff reports that, when the parties met and conferred about this document request in July 2026, the County represented that the vouchers described would be produced, but they had not been produced as of the filing of the motion in August 2026. Pl. Br. Supp., Doc. 50, at 10. In its opposition brief, the County has responded that it maintains its original objection to this request on overbreadth, undue burden, and relevance grounds, stating only generally that these other lawyers "provide legal services to Lackawanna County in a multitude of capacities, performing functions and services totally separate and distinct from those performed by Juvenile Delinquency Counsel," without any further elaboration. Cnty. Br. Opp'n 8–9.

As with several of the plaintiff's other discovery requests, on its face, Document Request No. 17 seeks relevant comparator information, and thus we find that it is reasonably calculated to lead to the discovery of admissible evidence. *See generally* Fed. R. Civ. P. 26(b)(1). We further

---

[5] Although the Jeffers statement is captioned as an "affidavit," it was neither notarized nor signed under penalty of perjury.

find the County's conclusory objection to Document Request No. 17 to be without merit. *See Momah*, 164 F.R.D. at 417 ("The onus is . . . on the party objecting to discovery to state the grounds for objection 'with specificity.' Mere recitation of the familiar litany that an interrogatory or document production request is 'overly broad, burdensome, oppressive and irrelevant' will not suffice." (citation omitted)); *see also Josephs*, 677 F.2d at 992; *Roesburg*, 85 F.R.D. at 295.

Accordingly, the County's objection to these interrogatories will be overruled, and the plaintiff's motion will be granted to the extent it requests an order directing the County to supplement its response to Document Request No. 17 and to produce, for any licensed attorney performing legal services for the County from 2020 through the present, any responsive non-privileged documents reflecting anyone classified as a "vendor" and paid on a "1099" basis, including but not limited to the vouchers described in the Jeffers Affidavit.

**H. Conclusion**

For the foregoing reasons, the plaintiff's motion to compel will be granted in part and denied in part. The parties shall each bear their own expenses incurred in connection with this motion. *See* Fed. R. Civ. P.

37(a)(5)(C).

An appropriate order follows.

Dated: October 27, 2026

*s/Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
United States District Judge